**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |
|---|---|
| DEANDRIES WILKINS, | |
| Plaintiff, | |
| v. | Cause No. 4:26-cv-00848 |
| CITY OF VINITA PARK, CITY OF ST. ANN, CHIEF JOHN BUCHANAN, UNKNOWN SUPERVISOR, UNKNOWN INTAKE MANAGER, AND MARCELLIS BLACKWELL, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT

COMES NOW Plaintiff Deandries Wilkins, by and through his undersigned counsel, and brings this Complaint for damages against Defendants City of Vinita Park, City of St. Ann, Chief John Buchanan, Unknown Supervisor, Unknown Intake Manager, and Marcellis Blackwell, and states as follows:

## PARTIES

1. Plaintiff Deandries Wilkins is and at all relevant times was a resident of St. Louis County in Missouri.

2. Defendant City of Vinita Park is and at all relevant times was a municipal entity in the State of Missouri.

3.    Defendant City of Vinita Park is the municipal entity that manages the North County Police Cooperative and is responsible for hiring Cooperative employees, supervising the Cooperative and its employees, setting policies and procedures for the Cooperative, training officers, and establishing the Cooperative's practices and customs.

4.    Defendant City of St. Ann is and at all relevant times was a municipal entity in the State of Missouri.

5.    Defendant City of St. Ann is the municipal entity that manages the St. Ann jail, which processes and houses individuals detained by the North County Police Cooperative.

6.    Defendant Chief John Buchanan is and at all relevant times was the chief of the North County Police Cooperative. Defendant Buchanan is named in his individual capacity.

7.    At all times relevant to this case, Defendant Chief John Buchanan was in charge of the operations of the North County Police Cooperative, including being responsible for the hiring of police officers generally, the hiring of Defendant Officer Blackwell, the supervision of officers, the supervision of Defendant Unknown Supervisor, the supervision of Defendant Officer Blackwell, the training of officers, the assignment of officers, the setting of policies and procedures for the North County Police Cooperative, and the establishment of the Cooperative's practices and customs.

8. Defendant Unknown Supervisor was at all relevant times a police officer employed by the North County Police Cooperative who directly supervised Defendant Marcellis Blackwell. Defendant Unknown Supervisor is named in their individual capacity.

9. At all times relevant to this case, Defendant Unknown Supervisor was Defendant Blackwell's direct supervisor and had responsibilities over the training of officers, the assignment of officers, the setting of policies and procedures for the North County Police Cooperative, and the establishment of the Cooperative's practices and customs.

10. Defendant Unknown Intake Manager was at all relevant times employed by the City of St. Ann to process detainees when they were brought to the St. Ann jail following detention by a North County Police Cooperative police officer. Defendant Unknown Intake Manager is named in their individual capacity.

11. At all times relevant to this case, Defendant Unknown Intake Manager had responsibilities over processing detainees in the custody of the North County Police Cooperative and the City of Vinita Park, supervising officers when they brought in detainees, and supervising Defendant Blackwell when he brought in detainees.

12. Defendant Marcellis Blackwell was at all relevant times a police officer employed by the North County Police Cooperative. Defendant Blackwell

is named in his individual capacity.

13.    Defendants were at all times relevant to this lawsuit residents or governmental entities of the State of Missouri.

## JURISDICTION AND VENUE

14.    This lawsuit is a civil action arising under the Constitution of the United States of America and Missouri law.

15.    The causes of action for this lawsuit arose in St. Louis County in Missouri, which is in the territorial jurisdiction of the Federal District Court of the Eastern District of Missouri.

16.    The Federal District Court of the Eastern District of Missouri has original jurisdiction over the claims arising under the United States Constitution pursuant to 28 U.S.C. § 1331.

17.    The Federal District Court of the Eastern District of Missouri has supplemental jurisdiction over the claim arising under Missouri law pursuant to 28 U.S.C. § 1367.

18.    Venue is appropriate in the Federal District Court of the Eastern District of Missouri pursuant to 28 U.S.C. § 1391.

## FACTS

**Defendant Blackwell Sexually Abused Plaintiff**

19.    On or around June 3, 2023, Defendant Blackwell pulled over Plaintiff for a routine traffic stop at the intersection of Natural Bridge Road and Lucas and Hunt Road in St. Louis County, Missouri.

20.    An Unknown Sergeant was on scene assisting Defendant Blackwell with the traffic stop.

21.    Defendant Blackwell searched Plaintiff's name in a law enforcement database and found outstanding traffic warrants.

22.    Defendant Blackwell thereafter placed Plaintiff under arrest and informed Plaintiff that he would be taken to the St. Ann Police Department for booking even though Beverly Hills Precinct, a department within the North County Police Cooperative, was located directly across the street.

23.    Defendant Blackwell locked Plaintiff in Defendant's police vehicle and transported Plaintiff away from the scene of the arrest.

24.    On information and belief, at some point during the arrest Defendant Blackwell removed his name badge and turned off his body camera.

25.    While transporting Plaintiff, Defendant Blackwell told Plaintiff he wished to pull over to adjust Plaintiff's handcuffs without any prompting or complaints from Plaintiff himself.

26.    Defendant Blackwell deviated from the direct route to St. Ann

Police Department by pulling into the Normandy High School parking lot and parking in an area hidden from public view.

27. When Defendant Blackwell stopped his vehicle, Plaintiff was sitting in the back seat with his hands bound.

28. Defendant Blackwell exited the vehicle and opened the back door nearest to Plaintiff.

29. Defendant Blackwell asked Plaintiff if he would like a cigarette and thereafter lit a cigarette for both him and Plaintiff.

30. Defendant Blackwell asked Plaintiff to exit the vehicle to be searched a second time.

31. Defendant Blackwell took out his cell phone and began recording the interaction with Plaintiff.

32. While Plaintiff was restrained and standing outside of Defendant's vehicle, Defendant Blackwell pulled down Plaintiff's pants and placed his hand on Plaintiff's genitals. Defendant fondled Plaintiff's genitals without Plaintiff's consent and without a legitimate government purpose.

33. While sexually abusing Plaintiff, Defendant Blackwell made statements to Plaintiff about whether he liked men and how Defendant Blackwell was touching Plaintiff.

34. Defendant Blackwell held his cellphone with his other hand and pointed the camera towards Plaintiff's penis.

35. On information and belief, Defendant Blackwell was sexually gratified while touching Plaintiff's genitals.

36. Defendant Blackwell dressed Plaintiff and placed Plaintiff back inside the police vehicle.

37. The incident lasted several minutes.

38. After Defendant Officer Blackwell sexually abused Plaintiff, Defendant transported Plaintiff to St. Ann Police Department, removed Plaintiff from the police vehicle, and brought Plaintiff into the police station.

39. Once inside the police station, Defendant Blackwell spoke with Defendant Unknown Intake Manager and told them that Defendant Blackwell had brought Plaintiff to the police station and would now immediately release and transport Plaintiff back to the site of the arrest.

40. On information and belief, Defendant Unknown Intake Manager produced a record that Defendant Blackwell had detained Plaintiff, brought Plaintiff to the police station, and was immediately taking Plaintiff back to the site of the arrest.

41. Defendant Unknown Intake Manager did not attempt to further question Defendant Blackwell or stop Defendant Blackwell from taking Plaintiff back to the arrest site.

42. Defendant Blackwell then took Plaintiff outside the police station and put Plaintiff back inside Defendant Blackwell's police vehicle.

43. Defendant Blackwell transported Plaintiff back to where he was arrested.

44. On information and belief, Defendant Blackwell sexually abused another individual earlier that morning. Defendant Blackwell kidnapped this other victim, turned off his body-worn camera, and falsified a police report. Defendant Unknown Supervisor and Defendant Unknown Intake Manager failed to properly supervise and manage Defendant Blackwell, allowing him to sexually abuse not one, but two individuals on the same day, and violate department guidelines multiple times in a single shift.

45. During the entirety of the interaction between Defendant Blackwell and Plaintiff, Defendant acted under color of state law and used his authority as a police officer to violate Plaintiff's civil rights.

46. As a result of Defendant Blackwell's sexual abuse, Plaintiff suffered physical and emotional distress.

47. Since Defendant Blackwell's sexual abuse, Plaintiff has been diagnosed with post-traumatic stress disorder and acute stress disorder and suffers from severe emotional distress, nightmares, sleepwalking, and anxiety requiring medication and ongoing medical treatment. Plaintiff has struggled to maintain relationships and employment as a direct result of Defendant's actions.

**Defendant Blackwell Sexually Abused Multiple Victims**

48.    On information and belief, prior to sexually abusing Plaintiff, Defendant Officer Blackwell sexually abused at least 18 other individuals while serving as a police officer.

49.    Based on a criminal indictment filed against Defendant Blackwell, Defendant Blackwell sexually abused his first known victim while serving as a police officer on November 8, 2022.

50.    Based on this criminal indictment, Defendant Blackwell sexually abused his second known victim while serving as a police officer on November 22, 2022. During that incident, Defendant kidnapped his victim, turned off his body-worn camera, and falsified a police report.

51.    Based on this criminal indictment, Defendant Blackwell sexually abused his third known victim while serving as a police officer on November 26, 2022. During that incident, Defendant kidnapped his victim, turned off his body-worn camera, and falsified a police report.

52.    Based on this criminal indictment, Defendant Blackwell sexually abused his fourth known victim while serving as a police officer on December 21, 2022.

53.    Based on this criminal indictment, Defendant Blackwell sexually abused his fifth known victim while serving as a police officer on March 20, 2023. During that incident, Defendant kidnapped his victim, turned off his

body-worn camera, and falsified a police report.

54. Based on this criminal indictment, Defendant Blackwell sexually abused his sixth known victim while serving as a police officer on March 27, 2023.

55. Based on this criminal indictment, Defendant Blackwell, in relation to a seventh known victim, turned off his body-worn camera and falsified a police report on April 10, 2023.

56. Based on this criminal indictment, Defendant Blackwell sexually abused his eighth known victim while serving as a police officer on April 15, 2023. During that incident, Defendant kidnapped his victim, turned off his body-worn camera, and falsified a police report.

57. Based on this criminal indictment, Defendant Blackwell sexually abused his ninth known victim while serving as a police officer on April 19, 2023. During that incident, Defendant kidnapped his victim, turned off his body-worn camera, and falsified a police report.

58. Based on this criminal indictment, Defendant Blackwell sexually abused his tenth known victim while serving as a police officer on April 25, 2023. During that incident, Defendant kidnapped his victim, turned off his body-worn camera, and falsified a police report.

59. Based on this criminal indictment, Defendant Blackwell sexually abused his eleventh known victim while serving as a police officer on April 26,

2023. During that incident, Defendant kidnapped his victim.

60.    Based on this criminal indictment, Defendant Blackwell sexually abused his twelfth known victim while serving as a police officer on April 27, 2023. During that incident, Defendant kidnapped his victim, turned off his body-worn camera, and falsified a police report.

61.    Based on this criminal indictment, Defendant Blackwell sexually abused his thirteenth known victim while serving as a police officer on May 14, 2023. During that incident, Defendant kidnapped his victim, turned off his body-worn camera, and falsified a police report.

62.    Based on this criminal indictment, Defendant Blackwell sexually abused his fourteenth known victim while serving as a police officer on May 16, 2023. During that incident, Defendant kidnapped his victim, turned off his body-worn camera, and falsified a police report.

63.    Based on this criminal indictment, Defendant Blackwell sexually abused his fifteenth known victim while serving as a police officer on May 30, 2023. During that incident, Defendant kidnapped his victim, turned off his body-worn camera, and falsified a police report.

64.    Based on this criminal indictment, Defendant Blackwell sexually abused his sixteenth known victim while serving as a police officer on May 30, 2023. During that incident, Defendant turned off his body-worn camera and falsified a police report.

65.    Based on this criminal indictment, Defendant Blackwell sexually abused his seventeenth known victim while serving as a police officer on June 3, 2023. During that incident, Defendant kidnapped his victim, turned off his body-worn camera, and falsified a police report. Defendant would commit these same acts against Plaintiff later that same day.

66.    Plaintiff was Defendant Blackwell's eighteenth known victim.

67.    Defendant Officer Blackwell has been indicted in connection with the sexual abuse of 19 victims between November 8, 2022, and June 5, 2023, and altering the records of another arrest. He is charged with 19 counts of deprivation of rights under color of law and 17 counts of altering records in a federal investigation.

68.    During those incidents, including when he sexually abused Plaintiff, Defendant Blackwell would deactivate his department-issued body-worn camera.

69.    Defendants Buchanan and Unknown Supervisor failed to review the recordings from Defendant Blackwell's body-worn camera.

70.    During those incidents, including when he sexually abused Plaintiff, Defendant Blackwell would transport his victims to secluded areas, requiring him to drive a greater distance than was necessary to transport detainees to a police station.

71.    Defendants Buchanan and Unknown Supervisor failed to review

the mileage records from Defendant Blackwell's police vehicle.

72. During many of those incidents, including when he sexually abused Plaintiff, Defendant Blackwell would file false and fraudulent police reports, including assertions that he kept his body-worn camera on during the entire interaction with his victims.

73. Defendants Buchanan and Unknown Supervisor failed to review Defendant Blackwell's police reports.

74. Defendants Buchanan and Unknown Supervisor failed to review the obvious discrepancies between Defendant Blackwell's police reports and his body-worn camera recordings.

75. Defendants Buchanan and Unknown Supervisor failed to review incidents, including Plaintiff's, where Defendant Blackwell would transport his victim to a police station and then immediately transport that victim back home.

76. Defendants Buchanan and Unknown Supervisor failed to conduct these reviews at least 17 other times over a period of seven months before Defendant Blackwell sexually assaulted Plaintiff.

77. Had Defendants Buchanan and Unknown Supervisor conducted even a cursory review of Defendant Blackwell's activities as a police officer under their supervision, they would have discovered numerous instances of wrongdoing by Defendant Blackwell prior to Defendant Blackwell violating

Plaintiff's civil rights.

78.     Defendants Buchanan and Unknown Supervisor purposely did not conduct a review of Defendant Blackwell's reports, camera footage, mileage, and practices as a police officer due to a staff shortage of police officers and the possibility that such a review would lead to the termination of Defendant Blackwell and exacerbate the North County Police Cooperative's staff shortage.

79.     On several occasions prior to and after Plaintiff's detention and abuse, Defendant Blackwell had detained other victims, arranged to be alone with his victims so he could sexually abuse them, brought his victims to the City of St. Ann jail and to Defendant Unknown Intake Manager, and told Defendant Unknown Intake Manager that he was immediately transporting his detainees back home or to the scene of the arrest.

80.     On information and belief, Defendant Blackwell's practice of bringing his victims to the police station and then immediately transporting them home or to the scene of the arrest violated departmental policy.

81.     On information and belief, Defendant Unknown Intake Manager knew that Defendant Blackwell's practice of bringing detainees to the police station and then immediately transporting them home or back to the scene of the arrest violated departmental policy.

82.     Defendant Unknown Intake Manager knew that Defendant

Blackwell's practice of bringing detainees to the police station and then immediately transporting them home or back to the scene of the arrest constituted suspicious behavior that required further investigation into whether Defendant Blackwell was appropriately detaining individuals.

83.    On information and belief, Defendant Unknown Intake Manager communicated Defendant Blackwell's suspicious behavior to others with the City of St. Ann and the North County Police Cooperative, but no one took any action to investigate Defendant Blackwell.

**Failure to Investigate Defendant Blackwell Prior to Hiring Him**

84.    On information and belief, Defendant Officer Blackwell previously went by the name Willis Green Overstreet III.

85.    On information and belief, prior to being hired to be a police officer by the North County Police Cooperative, Defendant Officer Blackwell was previously involved in illegal and fraudulent business activity, including defrauding his employees, an insurance company, and members of the public.

86.    On information and belief, Defendant Blackwell's previous incidents of fraudulent activity involved the falsification of required records.

87.    Defendant Officer Blackwell continued this pattern of fraudulent activity, including falsification of records, for months working as an officer with the North County Police Cooperative, which allowed him to falsely charge, harass, and sexually abuse individuals, including Plaintiff, while Defendant

was on duty.

88.    On information and belief, Defendant Blackwell's past involvement in illegal and fraudulent activity would have been apparent to anyone conducting a background check into Defendant Blackwell at the time of his hiring by the North County Police Cooperative.

89.    On information and belief, the North County Police Cooperative failed to properly investigate Defendant Officer Blackwell before hiring him to be a police officer and/or failed to deny Defendant Blackwell employment based on his history of committing fraud.

90.    On information and belief, the North County Police Cooperative failed to supervise Defendant Officer Blackwell after he became a police officer, allowing him to detain and sexually abuse individuals without penalty until he had victimized at least 19 people.

91.    On information and belief, the North County Police Cooperative's failure to supervise Defendant Blackwell includes, but is not limited to, failing to investigate Defendant Officer Blackwell, failing to assign another officer to work alongside Defendant, failing to review video and audio recordings, failing to ensure video and audio recordings were made of interactions between Defendant and detainees, failing to track Defendant's travel when Defendant was with detainees, failing to review police reports, and failing to otherwise review Defendant's interactions with detainees.

**Another Officer Abused a Civilian with No Immediate Consequences**

92.   On information and belief, on or around November 2, 2022 – six days before Defendant Blackwell sexually abused his first known victim and over half a year before he sexually abused Plaintiff – another police officer with the North County Police Cooperative physically abused a detainee and was permitted to remain employed without repercussion, despite other officers witnessing the activity. *Howard v. Sims*, 25SL-CC03690 (St. Louis County April 3, 2025); *State v. Sims*, 23SL-CR03645-01 (St. Louis County June 28, 2023).

93.   In that incident on or around November 2, 2022, the North County Police Cooperative officer travelled outside of his designated patrol area, failed to report his travel to police dispatch, arrived at another person's home, did not activate his body-worn camera, battered a man to the point that the victim had obviously been beaten, unlawfully detained the victim, and placed handcuffs on the man.

94.   In that incident on or around November 2, 2022, other North County Police Cooperative officers eventually arrived and witnessed the wrongdoing of the first responding officer.

95.   In that incident on or around November 2, 2022, other North County Police Cooperative officers witnessed the first responding officer order the victim to leave before the victim could be interviewed so that the first

responding officer could falsify records related to the incident.

96. Despite the fraudulent, abusive, and illegal behavior of the officer on or around November 2, 2022, the officer was permitted to remain employed as a police officer with the North County Police Cooperative until April 2023, when he again abused the same detainee in a second incident.

97. On information and belief, Defendants Buchanan and Unknown Supervisor were aware of the November 2, 2022, incident.

98. On information and belief, despite their knowledge of the November 2, 2022, incident, Defendants Buchanan and Unknown Supervisor did not change any police policies or practices to prevent officers from physically abusing detainees.

99. On information and belief, despite their knowledge of the November 2, 2022, incident, Defendants Buchanan and Unknown Supervisor did not change any police policies or practices to prevent officers from conducting unauthorized travel while on duty.

100. On information and belief, despite their knowledge of the November 2, 2022, incident, Defendants Buchanan and Unknown Supervisor did not change any police policies or practices to prevent officers from unlawfully detaining individuals.

101. On information and belief, despite their knowledge of the November 2, 2022, incident, Defendants Buchanan and Unknown Supervisor

did not change any police policies or practices to prevent officers from deactivating their body-worn cameras while interacting with members of the public.

102. On information and belief, despite their knowledge of the November 2, 2022, incident, Defendants Buchanan and Unknown Supervisor did not change any police policies or practices to prevent officers from falsifying records.

103. On information and belief, despite their knowledge of the November 2, 2022, incident, Defendants Buchanan and Unknown Supervisor did not change any of their policies or practices to supervise police officers, including reviewing their reports and body-worn camera footage, to prevent future incidents of police misconduct.

104. Although the officer involved in the November 2, 2022, incident was permitted to continue serving as a police officer for five months until he again physically abused the same detainee in a separate incident, the officer was eventually criminally charged with assault and kidnapping.

105. On information and belief, Defendant Blackwell was aware of the November 2, 2022, incident.

**Defendants Created a Culture Permitting Civil Rights Violations**

106. On information and belief, Defendants City of Vinita Park, Chief Buchanan, and Unknown Supervisor failed to train officers to prevent their

coworkers from abusing their authority and sexually abusing detainees.

107. On information and belief, Defendants City of St. Ann failed to train officers to prevent arresting officers, including those from other departments like the North County Police Cooperative using the St. Ann jail, from abusing their authority and sexually abusing detainees.

108. On information and belief, Defendants City of Vinita Park, Chief Buchanan, and Unknown Supervisor failed to train employees to appropriately investigate and evaluate police officer candidates so that individuals with histories of wrongdoing would not be given policing authority.

109. On information and belief, Defendants City of Vinita Park, City of St. Ann, Chief Buchanan, and Unknown Supervisor failed to establish policies or procedures to ensure that staff checked on the wellbeing of detainees, reviewed situations in which detainees were left alone with one unsupervised officer, provided detainees with effective manners to report officer wrongdoing, or ensure that detainees were safe from being sexually assaulted and wrongfully detained.

110. On information and belief, Defendants City of Vinita Park, Chief Buchanan, and Unknown Supervisor established a pattern or practice by which officers were not penalized for physically abusing detainees.

111. On information and belief, Defendants City of St. Ann and Unknown Intake Officer established a pattern or practice by which officers

were not investigated for suspicious behavior, including situations where the arresting officer would bring in an arrestee alone and the arresting officer would then tell the Intake Officer that the arresting officer was taking the arrestee back home or to the scene of the arrest rather than leaving the arrestee in the jail.

112.    At all relevant times to Plaintiff's claims, the North County Police Cooperative was facing a police officer staffing shortage.

113.    On information and belief, Defendants City of Vinita Park, Chief Buchanan, and Unknown Supervisor kept the officer involved in the November 2, 2022, incident on the police force due to the police staff shortage.

114.    On information and belief, Defendants City of Vinita Park, Chief Buchanan, and Unknown Supervisor failed to monitor police officers, including Defendant Blackwell, for misconduct due to the police staff shortage.

115.    On information and belief, Defendants City of Vinita Park, Chief Buchanan, and Unknown Supervisor failed to investigate Defendant Blackwell's body-worn camera footage and lack thereof due to the police staff shortage.

116.    On information and belief, Defendants City of Vinita Park, Chief Buchanan, and Unknown Supervisor failed to investigate Defendant Blackwell's false and fraudulent reports due to the police staff shortage.

117.    On information and belief, Defendants City of Vinita Park, Chief

Buchanan, and Unknown Supervisor failed to investigate Defendant Blackwell's mileage and travel due to the police staff shortage.

118. On information and belief, Defendants City of Vinita Park, City of St. Ann, Chief Buchanan, and Unknown Supervisor failed to investigate Defendant Blackwell's behavior, including Defendant Blackwell bringing arrestees to a police station and immediately returning them home, due to the police staff shortage.

**Sexual and Physical Abuses Were Known Issues in Policing**

119. Sexual offenses, physical abuse, fraudulent reporting, and abuse of authority by law enforcement are well-known issues.

120. In 2011, more than a decade before Defendant Blackwell sexually abused Plaintiff, the International Association of Chiefs of Police published a well-known report entitled, "Addressing Sexual Offenses and Misconduct by Law Enforcement: Executive Guide,"

https://www.theiacp.org/resources/document/addressing-sexual-offenses-and-misconduct-by-law-enforcement-executive-guide, last accessed Aug. 18, 2025. (Exhibit 1).

121. "[P]eriodic audits of each officer's traffic stops and final call dispositions are essential for identifying problematic patterns." *Id.* at p. 9.

122. "Leaders must be aware of the potential [for sexual misconduct in law enforcement] and willing to implement policy and procedures for

monitoring and intervening proactively." *Id.* at p. 6.

123. A 2020 article published in Family & Intimate Partner Violence Quarterly analyzed over 600 cases of law enforcement sexual abuse and recommended "the expanded use of automated vehicle locators (AVL) and body-worn cameras (BWC) that provide increased police monitoring as well as increased officer safety and assistance in reducing liability." (Stinson PM, Taylor RW, Liederbach J, The Situational Context of Police Sexual Violence: Data and Policy Implications, Fam. Intim. Partn. Violence Q. 2020 Spring). (Exhibit 2).

124. A 2016 study funded by the United States Department of Justice identified police sexual abuse as a major area of concern. Philip Matthew Stinson, John Liederbach, Steven P. Lab, Steven L. Brewer, Police Integrity Lost: A Study of Law Enforcement Officers Arrested, Bowling Green State University, pp. 21-23, https://www.ojp.gov/pdffiles1/nij/grants/249850.pdf, last accessed Aug. 18, 2025). (Exhibit 3).

125. The Center for Innovations in Community Safety offers free training to police departments through its Active Bystandership for Law Enforcement (ABLE) program to train law enforcement officers to identify and prevent misconduct by other police officers. About ABLE, https://www.law.georgetown.edu/cics/able/, last accessed Aug. 18, 2025. (Exhibit 4).

126.    Although six departments in the St. Louis Metropolitan Area have undertaken ABLE training, North County Police Cooperative is not one of them.  ABLE  Agencies,  https://www.law.georgetown.edu/cics/able/agencies-initiatives/, last accessed Aug. 18, 2025. (Exhibit 5).

127.    Defendants Buchanan, Unknown Supervisor, City of Vinita Park, and City of St. Ann were or should have been aware that sexual offenses, physical abuse, fraudulent reporting, and abuse of authority by law enforcement officials are studied issues and that it is crucial for police departments to implement and enforce early intervention systems to identify police misconduct.

128.    Despite their knowledge, Defendants Buchanan, Unknown Supervisor, City of Vinita Park, and City of St. Ann failed to implement early intervention systems to identify police misconduct, including Defendant Officer Blackwell's misconduct.

129.    Despite their knowledge that serious police misconduct involving another police officer physically abusing a resident and falsifying records had occurred in November 2022, Defendants Buchanan, Unknown Supervisor, and City of Vinita Park did not dismiss the officer until he had abused his position again in April 2023.

130.    Defendants Buchanan, Unknown Supervisor, City of Vinita Park, and City of St. Ann knew that police misconduct occurred within the North

County Police Cooperative.

131. Defendants Buchanan, Unknown Supervisor, North County Police Cooperative, City of Vinita Park, and City of St. Ann, despite this knowledge, refused to implement efforts to hold police officers accountable.

132. Defendants Buchanan, Unknown Supervisor, North County Police Cooperative, and City of Vinita Park, despite this knowledge, refused to implement efforts to hold police officers accountable to avoid exacerbating a staffing shortage.

133. Defendants Buchanan, Unknown Supervisor, North County Police Cooperative, City of Vinita Park, and City of St. Ann created a culture of permissive police misconduct prior to Plaintiff being sexually abused.

134. Several police departments in the St. Louis Metropolitan Area and throughout the country had adopted and enforced policies at the time relevant to Plaintiff's claims requiring monitoring of police officer behavior to detect signs of sexual misconduct and physical abuse. *See, e.g.,* International Association of Chiefs of Police, "Sexual Harassment and Misconduct," February 2022, https://www.theiacp.org/sites/default/files/2022-02/Sexual%20Harassment%20Misconduct%2002.2022.pdf, last accessed Aug. 18, 2025. (Exhibit 6).

135. Several police departments in the St. Louis Metropolitan Area and throughout the country had adopted and enforced policies at the time relevant

to Plaintiff's claims requiring supervisors to review body-worn camera footage to ensure compliance with departmental rules and identify police officer misconduct, including fraudulent reporting, physical abuse, and sexual misconduct. *See, e.g.,* St. Charles County Police Department Policy and Procedures Manual, "Body-Worn and In-Car Camera Systems," https://public.powerdms.com/STCHAR/tree/documents/858252, last accessed Aug. 18, 2025. (Exhibit 7).

136.   Several police departments in the St. Louis Metropolitan Area and throughout the country had adopted and enforced policies at the time relevant to Plaintiff's claims requiring supervisors to review mileage reports or police vehicle tracking data to ensure compliance with departmental rules and identify police officer misconduct, including fraudulent reporting, physical abuse, and sexual misconduct. *See, e.g.*, St. Louis County Police Department, "Departmental General Order 20-057: Prisoner Security and Accountability," https://www.stlouiscountypolice.com/who-we-are/policies-and-procedures/, last accessed Aug. 18, 2025. (Exhibit 8).

137. Despite a well-established standard in law enforcement to effectively monitor and supervise police officers, Defendants Buchanan, Unknown Supervisor, City of Vinita Park, and City of St. Ann failed to meet this standard.

138.   Despite a well-established standard in law enforcement to review

body-worn camera footage or the lack thereof of police officers, Defendants Buchanan, Unknown Supervisor, and City of Vinita Park failed to meet this standard.

139. Despite a well-established standard in law enforcement to track the travel of police officers while transporting civilians, Defendants Buchanan, Unknown Supervisor, and City of Vinita Park failed to meet this standard.

140. Had Defendants Buchanan, Unknown Supervisor, City of Vinita Park, and City of St. Ann met these well-established standards in law enforcement, Plaintiff would have been spared from the harm caused by Defendant Officer Blackwell.

141. Defendants Buchanan, Unknown Supervisor, and City of Vinita Park deliberately failed to meet these standards due to a police officer shortage and the knowledge that, if Defendants were to enforce these standards, they would have to investigate and terminate police officers abusing their authority, further exacerbating the staff shortage.

142. Defendant Buchanan, Unknown Supervisor, and City of Vinita Park had and continue to have an interest in expanding the area serviced by the North County Police Cooperative and generate revenue from municipalities that contract for such services.

143. Defendant City of St. Ann had and continues to have an interest in expanding the area serviced by its jail and generate revenue from

municipalities that contract for such services.

144.    Defendants Buchanan, Unknown Supervisor, and City of Vinita Park deliberately failed to meet these law enforcement standards because they knew that doing so would publicly reveal wrongdoing by North County Police Cooperative employees, harm the Cooperative's reputation, and would negatively affect the Cooperative's prospects to provide services to and generate revenue from other municipalities.

145.    Defendant City of St. Ann deliberately failed to meet these law enforcement standards because it knew that doing so would jeopardize its contract with the North County Police Cooperative to provide jail services.

146.    Defendants acted under color of state law.

147.    Defendants violated Plaintiff's civil rights.

148.    Defendants acted with deliberate indifference to Plaintiff's civil rights.

149.    As a result of Defendants' actions and inactions, Plaintiff suffered physical harm.

150.    As a result of Defendants' actions and inactions, Plaintiff suffered severe emotional distress.

## COUNT I: VIOLATION OF PLAINTIFF'S SUBSTANTIVE DUE PROCESS RIGHT TO BE FREE FROM SEXUAL ASSAULT UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

151. Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

152. Count I applies to Defendant Officer Blackwell.

153. While detaining Plaintiff in a police vehicle, Defendant Officer Blackwell forcibly touched Plaintiff's genitals without consent and without a valid purpose.

154. Defendant was directly responsible for the harm caused to Plaintiff.

155. Defendant acted under color of state law.

156. Defendant violated Plaintiff's substantive due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

157. Defendant acted with malicious, intentional, or reckless and callous disregard for Plaintiff's civil rights.

158. Defendant's actions caused Plaintiff physical harm.

159. Defendant's actions caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff prays judgment against Defendant in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendant from acting similarly in the future, attorneys' fees

and costs, and for such other and further relief as this Court deems just and proper.

## COUNT II: VIOLATION OF PLAINTIFF'S RIGHT TO BE FREE FROM ILLEGAL DETENTION UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

160. Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

161. Count II applies to Defendants Officer Blackwell and Unknown Intake Manager.

162. On June 3, 2023, Defendant Officer Blackwell detained Plaintiff.

163. Defendant Blackwell placed Plaintiff in restraints.

164. Defendant Blackwell placed Plaintiff into a police vehicle.

165. Defendant Blackwell began transporting Plaintiff to a police station.

166. During the trip to the police station, Defendant Officer Blackwell transported Plaintiff to a secluded area.

167. Once he reached the secluded area, Defendant Officer Blackwell sexually abused Plaintiff.

168. Defendant Officer Blackwell had no valid purpose to take Plaintiff to the secluded area.

169. Defendant Officer Blackwell had no valid purpose to detain Plaintiff on the way to the secluded area and in the secluded area.

170. Defendant Officer Blackwell had no valid purpose to continue detaining Plaintiff from the secluded area to the police station.

171. Defendant Unknown Intake Manager observed Defendant Officer Blackwell detain Plaintiff at the police station.

172. Defendant Unknown Intake Manager had reason to suspect Defendant Blackwell's behavior because Defendant Blackwell had on multiple occasions brought a detainee to the police station and, despite the accusations against the detainee, then reported to Defendant Unknown Intake Manager that he would transport the detainee back home or to the site of the arrest.

173. Defendant Unknown Intake Manager knew that this behavior conflicted with department policy.

174. Defendant Unknown Intake Manager permitted Defendant Blackwell to continue detaining Plaintiff at the police station and during Plaintiff's transport back to the arrest site.

175. Defendants Blackwell and Unknown Intake Manager were directly responsible for the harm caused to Plaintiff.

176. Defendants Blackwell and Unknown Intake Manager acted under color of state law.

177. Defendants Blackwell and Unknown Intake Manager violated Plaintiff's right to be free from illegal detention under the Fourth and Fourteenth Amendments to the United States Constitution.

178.  Additionally, Defendant Blackwell violated Plaintiff's substantive due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

179.  Defendants acted with malicious, intentional, or reckless and callous disregard for Plaintiff's civil rights.

180.  Defendants' actions caused Plaintiff physical harm.

181.  Defendants' actions caused Plaintiff severe emotion distress.

WHEREFORE, Plaintiff prays judgment against Defendants in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendants from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT III: FAILURE TO SUPERVISE STAFF TO ENSURE THE SAFETY OF PLAINTIFF AND OTHER DETAINEES UNDER 42 U.S.C. § 1983

182.  Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

183.  Count III applies to Defendants City of Vinita Park, City of St. Ann, Chief John Buchanan, and Unknown Supervisor.

184.  Defendants City of Vinita Park, Buchanan, and Unknown Supervisor held supervisory responsibilities with respect to the North County Police Cooperative and the individuals hired to be police officers.

185. Defendant City of St. Ann held supervisory responsibilities with respect to the staff at the St. Ann jail and the officers from other departments using the jail to detain and process arrestees.

186. Prior to June 3, 2023, Defendants were aware that, absent proper monitoring, police officers with the North County Police Cooperative could abuse their authority and subject civilians to abuses, including the abuses Plaintiff suffered.

187. Defendants failed to properly supervise staff, including Defendants Blackwell and Unknown Intake Officer, to ensure that detainees would not be sexually violated, physically abused, harassed, or otherwise harmed by police officers.

188. Defendants City of Vinita Park, Chief John Buchanan, and Unknown Supervisor failed to appropriately investigate and evaluate Defendant Officer Blackwell prior to his employment based on Defendant Blackwell's history of fraudulent activity, failed to assign another officer to accompany Defendant Blackwell, failed to review video and audio recordings, failed to ensure Defendant Blackwell's interactions with detainees were recorded, failed to track Defendant Blackwell's travel while he was with detainees, failed to review police reports, and failed to otherwise review Defendant Blackwell's interactions with detainees, including Defendant Blackwell's interactions with Plaintiff.

189. Defendants failed to review reports documenting Defendant Blackwell's suspicious and improper behavior, including reports that Defendant Blackwell had brought detainees to the police station and immediately transported them home.

190. Defendants failed to implement early intervention systems to identify police misconduct, including Defendant Officer Blackwell's misconduct.

191. Defendants failed to adopt an effective system to permit victims of police misconduct to report such misconduct.

192. Defendants acted under color of state law.

193. Defendants failed to use their authority to properly supervise staff, including Defendants Officer Blackwell and Unknown Intake Officer.

194. Defendants created an environment where police officers could abuse detainees without fear of repercussions.

195. Defendants' failure to provide appropriate supervision caused the violation of Plaintiff's civil rights.

196. Defendants City of Vinita Park, Chief John Buchanan, and Unknown Supervisor deliberately failed to provide appropriate supervision because they knew that doing so would require the termination of police officers committing wrongdoing, and such terminations would exacerbate a police officer shortage at the North County Police Cooperative.

197. Defendants City of Vinita Park, Chief John Buchanan, and Unknown Supervisor deliberately failed to provide appropriate supervision because they knew that doing so would publicly reveal wrongdoing by North County Police Cooperative employees, harm the Cooperative's reputation, and would negatively affect the Cooperative's prospects to provide services to and generate revenue from other municipalities.

198. Defendant City of St. Ann deliberately failed to provide appropriate supervision because it knew that doing so would jeopardize its contract with the North County Police Cooperative and its prospects with other municipalities.

199. Defendants acted with malicious, intentional, or reckless and callous disregard for Plaintiff's civil rights.

200. Defendants caused Plaintiff physical harm.

201. Defendants caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff prays judgment against Defendants in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendants from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT IV: FAILURE TO TRAIN STAFF TO ENSURE THE SAFETY OF PLAINTIFF AND OTHER DETAINEES UNDER 42 U.S.C. § 1983

202. Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

203. Count IV applies to Defendants City of Vinita Park, City of St. Ann, Chief John Buchanan, and Unknown Supervisor.

204. Defendants City of Vinita Park, Chief John Buchanan, and Unknown Supervisor held training responsibilities with respect to the North County Police Cooperative and the individuals hired to be police officers.

205. Defendant City of St. Ann held training responsibilities with respect to the St. Ann jail and the individuals hired to manage it.

206. Defendants failed to properly train staff to ensure that detainees would not be sexually abused or otherwise harmed by police officers.

207. Defendants failed to properly inform staff how to identify and report abusive conduct by other staff members, failed to direct staff to monitor new staff members, and failed to train staff to accept, investigate, verify, and act upon complaints regarding police officers' abusive conduct.

208. Defendants failed to implement early intervention systems to identify police misconduct, including Defendant Officer Blackwell's misconduct.

209. Defendants failed to adopt an effective system to permit victims of

police misconduct to report such misconduct.

210. Prior to June 3, 2023, Defendants were aware that, absent proper monitoring and training, police officers with the North County Police Cooperative could abuse their authority and subject civilians to abuses, including the ones Plaintiff suffered.

211. Prior to June 3, 2023, written reports, the absence of video footage, inconsistent mileage, and behavior related to Defendant Blackwell demonstrated that Defendant Blackwell was violating individual's civil liberties, and this information was observed by multiple employees of the North County Police Cooperative and by employees at the St. Ann jail, including by Defendants Unknown Intake Manager, Unknown Supervisor, and Buchanan.

212. Defendants acted under color of state law.

213. Defendants failed to use their authority to properly train staff.

214. Defendants' failure to train staff members caused the violation of Plaintiff's civil rights.

215. Defendants City of Vinita Park, Chief John Buchanan, and Unknown Supervisor deliberately failed to provide appropriate training because they knew that doing so would lead to the termination of police officers committing wrongdoing, and such terminations would exacerbate a police officer shortage at the North County Police Cooperative.

216. Defendants City of Vinita Park, Chief John Buchanan, and Unknown Supervisor deliberately failed to provide appropriate training because they knew that doing so would publicly reveal wrongdoing by North County Police Cooperative employees, harm the Cooperative's reputation, and would negatively affect the Cooperative's prospects to provide services to and generate revenue from other municipalities.

217. Defendant City of St. Ann deliberately failed to provide appropriate training because it knew that doing so would jeopardize its contract with the North County Police Cooperative and its prospects to provide services to other municipalities.

218. Defendants acted with malicious, intentional, or reckless and callous disregard for Plaintiff's civil rights.

219. Defendants caused Plaintiff physical harm.

220. Defendants caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff prays judgment against Defendants in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendants from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT V: FAILURE TO ESTABLISH POLICIES OR OFFICIAL CUSTOMS TO ENSURE THE SAFETY OF PLAINTIFF AND OTHER DETAINEES UNDER 42 U.S.C. § 1983

221. Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

222. Count V applies to Defendants City of Vinita Park, City of St. Ann, Chief John Buchanan, and Unknown Supervisor.

223. Defendants City of Vinita Park, Chief John Buchanan, and Unknown Supervisor held policymaking responsibilities with respect to the North County Police Cooperative and the individuals hired to be police officers.

224. Defendant City of St. Ann held policymaking responsibilities with respect to the St. Ann jail and the individuals hired to manage it.

225. Defendants failed to establish policies or official customs to ensure that detainees would not be sexually abused or otherwise harmed by police officers.

226. Prior to June 3, 2023, Defendants were aware that, absent proper monitoring, police officers with the North County Police Cooperative could abuse their authority and subject civilians to abuses, including the ones Plaintiff suffered.

227. Defendants City of Vinita Park, Chief John Buchanan, and Unknown Supervisor failed to establish policies or official customs to ensure the North County Police Cooperative appropriately investigate and evaluate

police officer candidates, assigned police officers to monitor each other, required and reviewed video and audio recordings of interactions between officers and detainees, tracked travel of officers while with detainees, informed staff how to identify and report abusive conduct by other staff members, reviewed police reports, and trained staff to accept, investigate, verify, and act upon complaints regarding police officers' abusive conduct.

228. Defendants failed to implement early intervention systems to identify police misconduct, including Defendant Officer Blackwell's misconduct.

229. Defendants failed to adopt an effective system to permit victims of police misconduct to report such misconduct.

230. Defendants acted under color of state law.

231. Defendants failed to use their authority to establish proper policies and official customs to prevent the abuse of detainees by police officers.

232. Defendants' failure to establish proper policies and official customs caused the violation of Plaintiff's civil rights.

233. Defendants City of Vinita Park, Chief John Buchanan, and Unknown Supervisor deliberately failed to establish proper policies and official customs because they knew that doing so would require the termination of police officers committing wrongdoing, and such terminations would exacerbate a police officer shortage at the North County Police Cooperative.

234. Defendants City of Vinita Park, Chief John Buchanan, and Unknown Supervisor deliberately failed to establish proper policies and official customs because they knew that doing so would publicly reveal wrongdoing by North County Police Cooperative employees, harm the Cooperative's reputation, and would negatively affect the Cooperative's prospects to provide services to and generate revenue from other municipalities.

235. Defendant City of St. Ann deliberately failed to establish proper policies and official customs because it knew that doing so would jeopardize its contract with the North County Police Cooperative and its prospects to provide services to other municipalities.

236. Defendants acted with malicious, intentional, or reckless and callous disregard for Plaintiff's civil rights.

237. Defendants caused Plaintiff physical harm.

238. Defendants caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff prays judgment against Defendants in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendants from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT VI: ESTABLISHMENT OF A PATTERN OR PRACTICE WHEREBY DETAINEES ARE NOT PROTECTED FROM HARM UNDER 42 U.S.C. § 1983

239.  Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

240.  Count VI applies to Defendants City of Vinita Park, City of St. Ann, Chief John Buchanan, and Unknown Supervisor.

241.  Defendants City of Vinita Park, Chief John Buchanan, and Unknown Supervisor held supervisory, training, policymaking, and other management responsibilities with respect to the North County Police Cooperative and the individuals hired to be police officers.

242.  Defendant City of St. Ann held supervisory, training, policymaking, and other management responsibilities with respect to the St. Ann jail and the individuals hired to manage it.

243.  Prior to June 3, 2023, Defendants were aware that, absent proper monitoring, police officers with the North County Police Cooperative could abuse their authority and subject civilians to abuses, including the ones Plaintiff suffered.

244.  Defendants failed to discipline officers who abused detainees.

245.  Defendants created an environment whereby police officers could abuse detainees without penalty.

246.  Defendants established a pattern or practice whereby detainees

would be subjected to abuse by police officers.

247. Defendants failed to implement early intervention systems to identify police misconduct, including Defendant Officer Blackwell's misconduct.

248. Defendants failed to adopt an effective system to permit victims of police misconduct to report such misconduct.

249. Defendants acted under color of state law.

250. Defendants' establishment of a pattern or practice whereby detainees would be subjected to abuse caused the violation of Plaintiff's civil rights.

251. Defendants City of Vinita Park, Chief John Buchanan, and Unknown Supervisor deliberately established a pattern or practice whereby detainees would be subjected to abuse because they knew that doing otherwise would require the termination of police officers committing wrongdoing, and such terminations would exacerbate a police officer shortage at the North County Police Cooperative.

252. Defendants City of Vinita Park, Chief John Buchanan, and Unknown Supervisor deliberately established a pattern or practice whereby detainees would be subjected to abuse because they knew that doing otherwise would publicly reveal wrongdoing by North County Police Cooperative employees, harm the Cooperative's reputation, and would negatively affect the

Cooperative's prospects to provide services to and generate revenue from other municipalities.

253. Defendant City of St. Ann deliberately established a pattern or practice whereby detainees would be subjected to abuse because they knew that doing otherwise would jeopardize its contract with the North County Police Cooperative and its prospects to provide services to other municipalities.

254. Defendants acted with malicious, intentional, or reckless and callous disregard for Plaintiff's civil rights.

255. Defendants caused Plaintiff physical harm.

256. Defendants caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff prays judgment against Defendants in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendants from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT VII: FALSE IMPRISONMENT UNDER MISSOURI STATE LAW

257. Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

258. Count VII applies to Defendants Officer Marcellis Blackwell and Unknown Intake Manager.

259. On or around June 3, 2023, Defendant Blackwell arrested Plaintiff during a routine traffic stop.

260. Defendant Blackwell transported Plaintiff to a secluded area and held Plaintiff at the secluded area without a proper governmental purpose in order to sexually abuse Plaintiff.

261. Defendant Blackwell knew that he was illegally detaining Plaintiff when he transported Plaintiff to a secluded area after the arrest.

262. Defendant Unknown Intake Manager had reason to suspect Defendant Blackwell's improper behavior because Defendant Blackwell, on multiple occasions including prior to Plaintiff's detention, had brought detainees to the St. Ann jail and then immediately released and transported them.

263. Defendant Unknown Intake Manager permitted Defendant Blackwell to continue detaining Plaintiff after the stop at the police station.

264. Defendants Blackwell and Unknown Intake Manager intended to illegally detain Plaintiff.

265. Plaintiff was aware of his confinement.

266. Defendants confined Plaintiff against Plaintiff's will.

267. Defendants used their official positions to detain Plaintiff.

268. Defendants' conduct was outrageous because of their evil motive or reckless indifference to the rights of others.

269. In addition to wrongfully depriving Plaintiff of his freedom, Defendants caused Plaintiff physical harm.

270. Defendants also caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff prays judgment against Defendants in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendants from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT VIII: BATTERY UNDER MISSOURI STATE LAW

271. Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

272. Count VIII applies to Defendant Officer Marcellis Blackwell.

273. On or around June 3, 2023, Defendant arrested Plaintiff during a routine traffic stop.

274. In conducting the arrest, Defendant transported Plaintiff to a secluded area to sexually abuse Plaintiff.

275. Defendant intentionally touched and fondled Plaintiff's genitals without Plaintiff's consent.

276. Defendant had no valid governmental purpose to touch and fondle Plaintiff's genitals.

277. Defendant's touching and fondling of Plaintiff's genitals is a

contact that would be offensive to a reasonable person.

278.   Defendant used his official position to batter Plaintiff.

279.   Defendant's conduct was outrageous because of his evil motive or reckless indifference to the rights of others.

280.   Defendant caused Plaintiff physical harm.

281.   Defendant also caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff prays judgment against Defendant in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendant from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT IX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER MISSOURI STATE LAW

282.   Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

283.   Count IX applies to Defendant Officer Marcellis Blackwell.

284.   Defendant used his authority as a police officer to harass and sexually abuse individuals on multiple occasions prior to arresting Plaintiff on or around June 3, 2023.

285.   On or around June 3, 2023, Defendant arrested Plaintiff with the intent to cause Plaintiff severe emotional distress.

286. Defendant transported Plaintiff to a secluded area and held Plaintiff at the secluded area without a proper governmental purpose in order to sexually abuse Plaintiff, and Defendant did sexually abuse Plaintiff, with the intent to cause Plaintiff severe emotional distress.

287. Defendant used his official position to inflict emotional distress on Plaintiff.

288. Defendant's conduct was extreme and outrageous.

289. Defendant caused Plaintiff physical harm.

290. Defendant also caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff prays judgment against Defendant in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendant from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT X: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER MISSOURI STATE LAW

291. Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

292. Count X applies to Defendant Officer Marcellis Blackwell.

293. Defendant used his authority as a police officer to harass and sexually abuse individuals on multiple occasions prior to arresting Plaintiff on

or around June 3, 2023.

294. On or around June 3, 2023, Defendant arrested Plaintiff and transported Plaintiff to a secluded area.

295. Defendant held Plaintiff at the secluded area without a proper governmental purpose in order to sexually abuse Plaintiff, and Defendant did sexually abuse Plaintiff.

296. Defendant used his official position to inflict emotional distress on Plaintiff.

297. Defendant's conduct was extreme and outrageous.

298. Defendant had a legal duty to protect Plaintiff from injury.

299. Defendant breached that duty.

300. Defendant caused Plaintiff physical harm.

301. Defendant also caused Plaintiff severe emotional distress.

302. Defendant's actions were the proximate cause of Plaintiff's injuries.

303. Plaintiff's injuries resulting from Defendant's conduct are medically diagnosable and medically significant.

304. Defendant should have realized that that his abuse of Plaintiff involved an unreasonable risk of causing Plaintiff distress.

WHEREFORE, Plaintiff prays judgment against Defendant in an amount that is fair and reasonable, including compensatory damages, punitive

damages to deter Defendant from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

**MO RIGHTS**

/s/ *Elad Gross*              /s/ *Anat Gross*
Elad Gross #67125MO          Anat Gross #74053MO
Attorney at Law              Attorney at Law
PO Box 21621                 PO Box 21621
St. Louis, MO 63109          St. Louis, MO 63109
Phone:  (314) 252-8069       Phone:  (314) 252-8085
Email: Elad@MORights.com     Email: Anat@MORights.com

**MANDEL, MANDEL, MARSH, SUDEKUM, & SANGER**

BY: /S/ PATRICK A. HAMACHER
PATRICK A. HAMACHER, #60210
1010 MARKET STREET, SUITE 850
SAINT LOUIS, MO 63101
(314) 621-1701 (TELEPHONE)
(314) 621-4800 (FACSIMILE)
PATRICK@MANDELMANDEL.COM

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of May 2026, the foregoing was filed electronically with the Clerk of the Court to be served upon all parties by operation of the Court's electronic filing system and sent by first class mail to all parties without counsel.


*/s/ Elad Gross*
Elad Gross
Attorney at Law